UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DAFNEY ROBERTHA CENEUS,

        Plaintiff,

    v.

Case No. 2:25-cv-1015-KCD-NPM

UNIFIED HR, LLC,  ITEL BPO
SMART SOLUTIONS, INC.,
COADVANTAGE RESOURCES,
INC.,

        Defendants,

_____/

## **ORDER**

In this employment dispute, Plaintiff Dafney Robertha Ceneus claims she was underpaid and then fired for speaking up about it. (*See* Doc. 1.)[1] She has sued three separate entities. One of them, Itel BPO Smart Solutions, Inc., supposedly "exerted primary control over [her] day-to-day work" and made the ultimate decision to terminate her. (*Id.* at 3.) The other two—Unified HR LLC and CoAdvantage Resources, Inc.—apparently handled the back-end logistics, such as paperwork and payroll.

Unified HR and CoAdvantage have now moved to dismiss the complaint, arguing that Ceneus has not alleged enough facts to show they were actually her employers under the law. They are right. The complaint

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

lacks the operational facts necessary to survive a motion to dismiss. Because an employment relationship is an indispensable threshold for her claims, and because the complaint repeatedly lumps all three companies together without distinguishing who did what, the motion to dismiss is granted.

## I. Background

According to the complaint, Ceneus began working for Itel as a customer service agent in October 2024. (Doc. 1 at 10.)[2] A few months later, a series of payroll delays and missing wages prompted her to protest. She posted in a company-wide communication channel that failing to pay employees was illegal and threatened to contact the Department of Labor. (*Id.*) The blowback was immediate: management allegedly banned her from communication tools, placed her under intense scrutiny, and ultimately fired her in February 2025. (*Id.* at 5.)

Ceneus now sues under Title VII of the Civil Rights Act of 1964, the Fair Labor Standards Act, and the Florida Private-Sector Whistleblower Act. Crucially, however, she filed her claims against three different companies. The complaint explicitly acknowledges that Itel "exerted primary control over Plaintiff's day-to-day work," provided her equipment, managed her supervisors, and made the ultimate decision to terminate her. (*Id.* at 9.)

---

[2] For ease of reference, the Court cites the page numbers generated by its electronic filing system for all docket entries and exhibits.

To pull Unified HR and CoAdvantage into the litigation, Ceneus relies on a few administrative markers. She alleges that Unified HR was identified as the "Client Company" on her paystubs. (*Id.*) And CoAdvantage was her "employer of record for payroll, benefits, and tax purposes." (*Id.*) Based on these sparse details, the complaint asserts the legal conclusion that all three corporations operated as a "single, integrated enterprise and/or joint employers." (*Id.* at 10.)

Unified HR and CoAdvantage have moved to dismiss the claims against them, arguing that there are no facts demonstrating operational control or administrative exhaustion. (Doc. 16.) Ceneus responded, emphasizing her pro se status and arguing that because her claims focus heavily on payroll discrepancies, the entities responsible for processing her checks are naturally proper defendants. (Doc. 18.)

## II. Legal Standard

To survive a motion to dismiss, "a complaint must contain sufficient facts, accepted as true, to state a facially plausible claim for relief." *Galette v. Goodell*, No. 23-10896, 2023 WL 7391697, at *3 (11th Cir. Nov. 8, 2023). "A claim is facially plausible if it pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

3

When reviewing a motion to dismiss, courts must accept all factual allegations in the complaint as true and view the facts in the light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). And "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

### III. Discussion

For any of Ceneus's claims to proceed against Unified HR or CoAdvantage, she must plausibly allege that they were her employers. *See Lyes v. City of Riviera Beach, Fla.*, 166 F.3d 1332, 1341 (11th Cir. 1999); *Rivera v. Superior Restoration & Cleaning Servs., Inc.*, No. 19-61700-CIV, 2020 WL 4501764, at *5 (S.D. Fla. May 20, 2020); *Cabreja v. SC Maint., Inc.*, No. 8:19-CV-296-T-33CPT, 2019 WL 2931469, at *3 (M.D. Fla. June 19, 2019). Because she explicitly gives Itel credit for her day-to-day management, her case against the other defendants lives or dies on a "joint employer" or "single enterprise" theory. (*See* Doc. 1 at 10.)

Determining whether separate corporate entities act as joint employers is a highly contextual, fact-driven inquiry that looks past formal agreements

4

and straight at the economic realities of the workplace. *Layton v. DHL Exp. (USA), Inc.*, 686 F.3d 1172, 1175 (11th Cir. 2012); *Peppers v. Cobb Cnty., Georgia*, 835 F.3d 1289, 1300 (11th Cir. 2016). Courts look to whether the alleged joint employer retained control over the essential terms and conditions of employment, such as the authority to hire and fire employees, supervise and control work schedules or conditions of employment, determine the rate and method of payment, and maintain employment records. *Layton*, 686 F.3d at 1176. Under the closely related "single enterprise" test for civil rights claims, a court balances four familiar operational factors: (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control. *Lyes*, 166 F.3d at 1341-42.

The problem here is that the complaint lacks any operational facts touching on these elements. Instead, it offers a few purely administrative details: CoAdvantage processed her taxes and benefits, and Unified HR's name appeared on her paystubs. But processing paychecks is a far cry from dictating structural employment conditions. The complaint never suggests that Unified HR or CoAdvantage had a hand in hiring her, set her hours, told her how to handle customer calls, or orchestrated her termination. To the contrary, she attributes all those critical operational decisions directly to Itel.

As other courts have recognized, such sparse details are insufficient to establish a joint employer or a single enterprise. *See, e.g.*, *Roundtree v. Tegna, Inc.*, No. 8:19-CV-2857-T-36SPF, 2020 WL 4582741, at \*3 (M.D. Fla. Aug. 10, 2020). In *Roundtree*, a plaintiff attempted to sue a parent corporation alongside his direct employer, relying on generalized assertions that he "began his employment with Defendants" as a collective enterprise. *Id.* at \*3. The court rejected that approach because the complaint "alleged no factual allegations even remotely addressing the joint employer factors." *Id.* at \*4. Ceneus's complaint suffers from the same structural vacancy. Administrative proximity is not workplace control. Because her complaint contains no real facts demonstrating shared labor controls, common management, or split operational authority, the joint-employer and single-enterprise allegations fail as a matter of law.

Beyond the failure to establish an employment relationship, the complaint runs headfirst into a classic pleading trap: it is a shotgun pleading. The Eleventh Circuit has zero tolerance for complaints that lump separate parties together indiscriminately. *See Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321 (11th Cir. 2015). Ceneus treats the three defendants as a single monolith. She routinely alleges that "Defendants" knew of her protected activity, "Defendants" took adverse actions, and "Defendants" failed to pay her. Yet her factual narrative tells another story—

6

one where Itel alone was running the show, conducting meetings, banning her from software channels, and executing her termination. By generically billing "Defendants" for the alleged misconduct, they are left in the dark as to what distinct retaliatory actions or statutory omissions they are being called to account for.

Now, to be fair, if Ceneus had plausibly established that Defendants operated as a single integrated enterprise or joint employers, this kind of collective grouping might fly. When separate corporations deeply intertwine their labor relations and daily operations, they can become jointly responsible for the same workplace wrongs. But that is the horse, and collective pleading is the cart. A plaintiff cannot use a shotgun framework to bootstrap a joint-employer theory into existence. Rather, she must plead the actual operational facts showing shared control *before* she can treat distinct corporate entities as a single monolith.

Finally, CoAdvantage raises an independent barrier to the Title VII claim: administrative exhaustion. Before a plaintiff can haul an employer into federal court under Title VII, she must file a timely charge with the EEOC against that party. *Virgo v. Riviera Beach Assocs., Ltd.*, 30 F.3d 1350, 1358 (11th Cir. 1994). The complaint explicitly notes that only "Unified HR was listed as the employer on her EEOC charge." (Doc. 1 at 9.) CoAdvantage is completely absent from the administrative record.

7

While Ceneus rightly notes in her response that courts recognize a narrow "identity of interest" exception when an unnamed party shares an operational alignment or had actual notice of the administrative proceeding (Doc. 18 at 8), that exception has no application here. Because the complaint fails to establish any baseline joint operational control or common management between Unified HR and CoAdvantage to begin with, there is no factual foundation on which to build a shared identity of interest.

Ceneus is proceeding without counsel, and pro se litigants should generally be afforded an opportunity to correct pleading technicalities before their claims are permanently extinguished. Accordingly, the Court will dismiss the complaint *without prejudice* and allow an opportunity to plead more specific operational facts, if any exist. But Ceneus is cautioned that she cannot sue every company whose name or logo appeared on her employment paperwork. That is not how Title VII, the FLSA, or Florida law works. Any further pleadings must be directed at her actual employer, rather than casting an overbroad net over everyone who handled a paystub.

For these reasons, Unified HR and CoAdvantage's motion to dismiss (Doc. 16) is **GRANTED**. The claims directed at them are dismissed **WITHOUT PREJUDICE**. Ceneus may file an amended complaint within fourteen days of this order. Failure to do so will result in this case proceeding only on the remaining claims against Itel.

9

**ORDERED** in Fort Myers, Florida on June 29, 2026.

Kyle C. Dudek
United States District Judge